181 P.3d 858 (2008)
STATE of Washington, Respondent,
v.
Brenton D. THOMPSON, Appellant.
No. 34540-4-II.
Court of Appeals of Washington, Division 2.
April 8, 2008.
*860 Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Appellant.
Kathleen Proctor, Pierce County Prosecuting Atty. Ofc., Tacoma, WA, for Respondent.
PENOYAR, J.
¶ 1 Brenton Thompson appeals his sentence following a remand for resentencing. A jury convicted Brenton Thompson of first degree murder and first degree assault in 2000. In a 2003 decision, this court remanded his assault conviction based on a faulty accomplice instruction. The next year, Thompson was again convicted on the assault charge, and he later filed a personal restraint petition (PRP) with this court contesting his sentence. We granted his petition in part due to an incorrect offender score. Additionally, the order granting his petition in part permitted Thompson to present arguments and documents at resentencing regarding inclusion of prior convictions in the calculation of his offender score. Thompson unsuccessfully moved to exclude the convictions at resentencing. The court resentenced Thompson, and he now appeals, claiming that the trial court (1) did not follow the law of the case, and (2) improperly calculated his offender score by including two 1995 convictions that are facially constitutionally invalid. The trial court allowed Thompson to make his presentation consistent with the remand order and found that the 1995 convictions were not facially invalid. We affirm.

FACTS
¶ 2 The facts below are taken from State v. Thompson, noted at 117 Wash.App. 1085, 2003 WL 21744337, 2003 Wash.App. LEXIS 1712.
¶ 3 In 1998, Thompson and an acquaintance attempted to steal a Cadillac from Calvin Labee, Jr., and Julie Maroni. When the couple exited the car, Thompson's acquaintance chased after Labee while Thompson chased Maroni. Labee was shot once and escaped. Maroni died of multiple gunshot wounds  she had been hit with a minimum of six bullets.
¶ 4 The jury convicted Thompson of first degree murder and first degree assault, but acquitted him of second degree unlawful possession of a firearm. By special verdict, the jury found that Thompson or an accomplice was armed with a firearm during the commission of the murder and the assault.
¶ 5 Thompson appealed his convictions, assigning error to an accomplice liability instruction, the lack of sufficient evidence, and the absence of a unanimity instruction. In his pro se supplemental brief, Thompson further alleged that the trial court erred in excluding exculpatory hearsay evidence, the jury's verdicts were inconsistent, and the trial court was biased against him. This court affirmed the murder conviction; but reversed and remanded the assault conviction.
¶ 6 In 2004, Thompson was reconvicted on the assault charge. Again, the jury found that he was armed with a firearm during the commission of the assault. State v. Thompson, noted at 132 Wash.App. 1022, 2006 WL 853368 at *2, 2006 Wash.App. LEXIS 593, at *5.
¶ 7 Thompson filed a PRP with this court, contesting the restraint imposed following his first degree murder and first degree assault convictions. This court granted the petition in part and denied it in part, and remanded the case for resentencing.
¶ 8 Thompson then filed a motion to exclude his prior convictions at resentencing. In that motion, he argued again that his prior convictions were facially invalid. The resentencing court denied Thompson's motion after hearing arguments from both parties; it then calculated his offender score at three and sentenced him to 604 months. This sentence included 361 months for the *861 murder conviction, 123 months for the assault conviction, and 60 months for each of the deadly weapon enhancements, to be served consecutively. Additionally, the court ordered 24 months of community placement for both the murder and assault convictions. Thompson now appeals his resentencing.

ANALYSIS
I. Offender Score Calculation
¶ 9 Thompson argues that the resentencing court erred in calculating his offender score at three, claiming that his two 1995 convictions were constitutionally invalid on their face and therefore could not be used to calculate his offender score. Thompson asserts that the plea agreement for his two 1995 convictions incorrectly indicated 10-year maximum sentences for each. In fact, the correct maximum sentence for each crime was only five years  which was properly noted on the formal judgment and sentence form. Thompson contends that the discrepancy between forms renders his 1995 convictions constitutionally invalid on their face because his plea was not knowing; he alleges he was not properly informed of the correct maximum possible sentence before entering his plea.
¶ 10 Under the Sentencing Reform Act (SRA), chapter 9.94A RCW, a court examines a defendant's prior convictions to determine his offender score. See RCW 9.94A.525. This offender score is then used in determining a defendant's standard sentencing range. See RCW 9.94A.530. The State has the burden of proving prior convictions used to calculate an offender score, but it is not responsible for proving the underlying constitutional validity of those convictions. RCW 9.94A.530(2); State v. Mendoza, 139 Wash.App. 693, 698-99, 162 P.3d 439 (2007); see also, State v. Ammons, 105 Wash.2d 175, 187, 713 P.2d 719 (1986), (amended by, 105 Wash.2d 175, 718 P.2d 796 (1986)). Indeed, "the constitutional validity of the prior convictions is generally not subject to challenge in sentencing proceedings." State v. Jones, 110 Wash.2d 74, 77, 750 P.2d 620 (1988). Otherwise, sentencing proceedings for the current conviction would become an appellate forum for prior convictions: "[A] defendant has no right to contest a prior conviction at a subsequent sentencing. To allow an attack at that point would unduly and unjustifiably overburden the sentencing court. The defendant has available, more appropriate arenas for the determination of the constitutional validity of a prior conviction." Ammons, 105 Wash.2d at 188, 713 P.2d 719. For this reason, "[i]n [Ammons], . . . the Supreme Court severely restricted a defendant's ability to mount a collateral attack on a prior conviction at a sentencing hearing." State v. Bembry, 46 Wash.App. 288, 289, 730 P.2d 115 (1986).
¶ 11 An exception to this general rule exists where the prior conviction is "constitutionally invalid on its face." Ammons, 105 Wash.2d at 187-88, 713 P.2d 719. Constitutionally invalid on its face means a "conviction which without further elaboration evidences infirmities of a constitutional magnitude." Ammons, 105 Wash.2d at 188, 713 P.2d 719. The defendant, and not the State, "bears the burden of establishing the unconstitutionality of his or her prior convictions at such a proceeding." In re Pers. Restraint of Williams, 111 Wash.2d 353, 368, 759 P.2d 436 (1988).
¶ 12 To determine facial invalidity of a prior conviction, the sentencing court may review the judgment and sentence and any other document that qualifies as "the face of the conviction." See State v. Gimarelli, 105 Wash.App. 370, 377, 20 P.3d 430 (2001). The face of the conviction, has been interpreted to include those documents signed as part of a plea agreement. State v. Phillips, 94 Wash.App. 313, 317, 972 P.2d 932 (1999); State v. Davis, 47 Wash.App. 91, 94, 734 P.2d 500 (1987); Bembry, 46 Wash.App. at 291, 730 P.2d 115. In reviewing the plea agreement documents, where a clear determination of constitutional invalidity cannot be made, the conviction is not facially invalid. Ammons, 105 Wash.2d at 189, 713 P.2d 719. If the "trial court would have to go behind the verdict and sentence and judgment to make" a determination on constitutional invalidity, the conviction is not facially invalid. Ammons, 105 Wash.2d at 189, 713 P.2d 719.
*862 ¶ 13 In Ammons, one of the defendants, Eugene Garrett, claimed facial invalidity of a prior conviction at sentencing, where the plea forms (1) failed to show that he was aware of his right to remain silent, (2) failed to set forth the elements of the crime of burglary, and (3) failed to set forth the consequences of pleading guilty. Ammons, 105 Wash.2d at 189, 713 P.2d 719. From the record, it was not clear whether Garrett's attorney or the trial court informed Garrett of the necessary elements, rights, and consequences missing from the plea forms. The Ammons court conceded that the prior conviction could be unconstitutional, but because such a determination could not be made from the guilty plea forms alone, Garrett's claim of facial invalidity failed. Ammons, 105 Wash.2d at 189, 713 P.2d 719. The appeals court further noted that absent such an affirmative showing, Garrett "must pursue the usual channels for relief." Ammons, 105 Wash.2d at 189, 713 P.2d 719
¶ 14 To determine whether Thompson's 1995 convictions are facially invalid, we review his plea agreement. The guilty plea form notes an incorrect 10-year maximum sentence for each crime, while the corresponding judgment and sentence lists the correct 5-year maximum sentence. From review of the face of these documents alone, we do not know whether Thompson was informed of the correct maximum possible sentence on each crime. We concede that given the discrepancy between the forms, Thompson's convictions may be unconstitutional. Like Ammons though, because a determination cannot be made from review of the forms alone, Thompson's claim fails. With the burden of proof on Thompson to establish the unconstitutionality of the pleas, his recourse is to "pursue the usual channels provided for post-conviction relief, and, if successful, request resentencing." Davis, 47 Wash.App. at 94, 734 P.2d 500 (citing Ammons, 105 Wash.2d at 188-89, 713 P.2d 719).
II. Law of the Case Doctrine
¶ 15 Thompson claims that, at resentencing, the trial court was bound by this court's statement that he "may, however, present whatever documents and arguments he claims support his position at the resentencing hearing." Appellant's Br. at 8; Clerk's Papers (CP) at 84. Therefore, he contends that the resentencing court violated the law of the case doctrine by "refusing to consider" his arguments regarding the inclusion of his prior convictions in the calculation of his offender score. Appellant's Br. at 7.
¶ 16 The State responds that the law of the case doctrine does not apply, as this court's statement was dicta and not a holding. Additionally, the State argues that the court's invitation to Thompson to present further documents and arguments was "clearly erroneous," as previous convictions must be facially unconstitutional in order to be contested at a later sentencing hearing. Resp't's Br. at 12.
¶ 17 Neither Thompson's nor the State's arguments are persuasive. Our review of the record indicates that Thompson was allowed to present documents and arguments to the resentencing court, which the court then refused to act on. Thompson filed a motion to exclude his prior convictions from his offender score calculation on January 13, 2006, two weeks before the resentencing hearing was scheduled.[1] The motion included Thompson's arguments that the prior convictions were facially invalid. Additionally, Thompson argued his theories at the resentencing hearing. Specifically, he argued that his prior plea was made unknowingly and, therefore, that it was invalid on its face.
¶ 18 In response, the resentencing court stated that it did not believe that our order required it to grant Thompson a full hearing on those issues. However, it listened to Thompson's arguments, as well as the State's responses, before it specifically denied Thompson's motion. We hold that the resentencing court did not violate the law of the case doctrine. It acted in full accordance with our order by allowing Thompson to submit documents and arguments he believed supported his position that his prior *863 convictions should not be included in calculating his offender score.
III. Firearm Enhancement
¶ 19 Thompson argues in his statement of additional grounds (SAG) that his sentencing enhancement was improper because the trial court did not instruct the jury to find a nexus between him, the weapon, and the murder. He claims that this sentencing enhancement amounted to judicial fact-finding in violation of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
¶ 20 Thompson raised the same argument in his previous PRP, which we rejected:
Thompson has not presented the court's instruction to the jury and thus he has failed to show that they did not sufficiently inform the jury to find a relationship between the defendant, the weapon, and the crime. See also State v. O'Neal, 126 Wash. App. 395, 109 P.3d 429 (2005) (discussing [State v. Holt, 119 Wash.App. 712, 82 P.3d 688 (2004)] and [State v. Willis, 153 Wash.2d 366, 103 P.3d 1213 (2005)]). We assume then that the instructions were proper and that the court imposed the firearm enhancement based on the jury's, not the judge's, finding of fact.
CP at 83.
¶ 21 Thompson attached the jury instructions to his SAG as an Exhibit, but they are not designated in the clerk's papers and are not properly within the record on review. See RAP 9.2(b). Also, there are no instructions regarding the actual firearm enhancement; he included the instructions for only murder, robbery, assault, and unlawful possession of a firearm. Because he has not included instructions regarding the firearm enhancement as part of the record on appeal, we cannot review Thompson's claim and he cannot overcome the presumption that the instructions were proper.
¶ 22 Moreover, the record does not indicate that Thompson challenged the special verdict instructions at trial, and Thompson originally appealed only the accomplice instruction. See Thompson, 2003 WL 2174433, at *3, 2003 Wash.App. LEXIS 1712, at *7. The Washington Supreme Court has found that a defendant's failure to ask for the nexus instruction at trial generally bars relief on review on the ground of instructional error. State v. Eckenrode, 159 Wash.2d 488, 491, 150 P.3d 1116 (2007) (citing Willis, 153 Wash.2d at 374, 103 P.3d 1213).
¶ 23 Additionally, in this case, the record shows overwhelming evidence to find a connection between the crime, Thompson, and the gun. Accordingly, we affirm the imposition of the firearm enhancement.
IV. Restitution Order
¶ 24 Thompson argues that the Department of Corrections (DOC) improperly modified his restitution order. He claims that DOC is currently deducting 20 percent of all funds that are received in his prison account "towards the payment of Legal/Financial Obligations." SAG at 3.
¶ 25 The restitution order states as follows:
All payments shall be made in accordance with the policies of the clerk, commencing immediately, unless the court specifically sets forth the rate herein: Not less than $5.00 per month commencing June 2006. RCW 9.94.760.
CP at 97.
¶ 26 Thompson attached to his SAG, as Exhibit B, a letter from DOC stating that he would begin paying $5 per month in June 2006, as the court ordered. Prior to June 2006, DOC continued to collect 20 percent of Thompson's deposits per month.
¶ 27 The letter establishes DOC's compliance with the restitution order. Thompson has not established that DOC improperly modified the order, and his argument is without merit.
V. Maximum Sentence
¶ 28 Finally, Thompson argues that the two years of community placement, in addition to his prison sentences, exceeds the statutory maximum in violation of RCW 9.94A.505(5). He makes a similar argument regarding his 60-month firearm enhancement. Neither of these arguments has merit.
*864 ¶ 29 The resentencing court sentenced Thompson to 361 months for first degree murder (count I), 123 months for first degree assault (count II), 60 months on each firearm enhancement (totaling 120 months), and 24-months community placement on each of the counts (totaling 48 months). The maximum sentence for both first degree murder and first degree assault is life imprisonment. See RCW 9A.32.040, 9A.32.030(2), 9A.20.021(1)(a). Therefore, neither the addition of 120-months imprisonment for the firearm enhancement nor the 48-months community placement exceeded the statutory maximum sentence permissible under chapter 9A.20 RCW. Thompson's argument is unpersuasive.
¶ 30 We affirm.
We concur: ARMSTRONG, P.J., and HUNT, J.
NOTES
[1] The resentencing hearing was later delayed until February 3, 2006, in order to ensure that the victim's family could attend.